OGLEBAY NORTON COMPANY, APPELLEE, *v.* ARMCO, INC., APPELLANT.

[Cite as Oglebay Norton Co. *v.* Armco, Inc. (1990), 52 Ohio St. 3d 232.]

(No. 89-1005—Submitted May 16, 1990—Decided July 11, 1990.)

234

*Thompson, Hine & Flory, William H. Wallace, David J. Hooker, Keith L. Carson* and *Thomas J. Piatak,* for appellee.

*Squire, Sanders & Dempsey, Eric M. Oakley* and *Jill G. Okun,* for appellant.

*Per Curiam.* This case presents three mixed questions of fact and law. First, did the parties intend to be bound by the terms of this contract despite the failure of its primary and secondary pricing mechanisms? Second, if the parties did intend to be bound, may the trial court establish $6.25 per gross ton as a reasonable rate for Armco to pay Oglebay for shipping Armco ore during the 1986 shipping season? Third, may the trial court continue to exercise its equitable jurisdiction over the parties, and may it order the parties to utilize a mediator if they are unable to mutually agree on a shipping rate for each annual shipping season? We answer each of these questions in the affirmative and for the reasons set forth below affirm the decision of the court of appeals.

I

Appellant Armco argues that the complete breakdown of the primary and secondary contract pricing mechanisms renders the 1957 contract unenforceable, because the parties never manifested an intent to be bound

in the event of the breakdown of the primary and secondary pricing mechanisms. Armco asserts that it became impossible after 1985 to utilize the first pricing mechanism in the 1957 contract, *i.e.,* examining the published rate for a leading shipper in the "Skillings Mining Review," because after 1985 a new rate was no longer published. Armco asserts as well that it also became impossible to obtain the information necessary to determine and take into consideration the rates charged by leading independent vessel operators in accordance with the secondary pricing mechanism. This is because that information was no longer publicly available after 1985 and because the trial court granted the motions to quash of non-parties, who were subpoenaed to obtain this specific information.[4] Armco argues that since the parties never consented to be bound by a contract whose specific pricing mechanisms had failed, the trial court should have declared the contract to be void and unenforceable.

The trial court recognized the failure of the 1957 contract pricing mechanisms. Yet the trial court had competent, credible evidence before it to conclude that the parties intended to be bound despite the failure of the pricing mechanisms. The evidence demonstrated the long-standing and close business relationship of the parties, including joint ventures, interlocking directorates and Armco's ownership of Oglebay stock. As the trial court

pointed out, the parties themselves contractually recognized Armco's vital and unique interest in the combined dedication of Oglebay's bulk vessel fleet, and the parties recognized that Oglebay could be required to ship up to 7.1 million gross tons of Armco iron ore per year.

Whether the parties intended to be bound, even upon the failure of the pricing mechanisms, is a question of fact properly resolved by the trier of fact. *Normandy Place Assoc.* v. *Beyer* (1982), 2 Ohio St. 3d 102, 106, 2 OBR 653, 656, 443 N.E. 2d 161, 164. Since the trial court had ample evidence before it to conclude that the parties did so intend, the court of appeals correctly affirmed the trial court regarding the parties' intent. We thus affirm the court of appeals on this question.

## II

Armco also argues that the trial court lacked jurisdiction to impose a shipping rate of $6.25 per gross ton when that rate did not conform to the 1957 contract pricing mechanisms. The trial court held that it had the authority to determine a reasonable rate for Oglebay's services, even though the price mechanism of the contract had failed, since the parties intended to be bound by the contract. The court cited 1 Restatement of the Law 2d, Contracts (1981) 92, Section 33, and its relevant comments to sup-

---

[4] Oglebay Norton sought subpoenas from independent vessel operators and captive fleets to obtain information about rates those carriers were charging for the transportation of iron ore to lower lake ports. The other carriers resisted the subpoenas, requesting that the court quash the subpoenas or issue a protective order. The subpoenas were quashed prior to trial. The

trial court's reasons for sustaining the motion to quash rather than issuing a protective order are unclear. It would appear that such information taken pursuant to a protective order under Civ. R. 26(C) might have been appropriate, given the dearth of reliable information concerning past and future controversies regarding rates.

port this proposition. Comment *e* to Section 33 explains in part:

"* * * Where * * * [the parties] * * * intend to conclude a contract for the sale of goods * * * and the price is not settled, the price is a reasonable price at the time of delivery if * * * (c) the price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded. Uniform Commercial Code § 2-305 (1)." *Id.* at 94-95.

As the trial court noted, Section 33 was cited with approval by the Court of Appeals for Cuyahoga County in *Mr. Mark Corp.* v. *Rush, Inc.* (1983), 11 Ohio App. 3d 167, 11 OBR 259, 464 N.E. 2d 586, and in *Northcoast Cookies, Inc.* v. *Sweet Temptations, Inc.* (1984), 16 Ohio App. 3d 342, 16 OBR 391, 476 N.E. 2d 388. Restatement Section 33, Comment *e* follows virtually identical language contained in Section 2-305(1) of the Uniform Commercial Code, which was adopted in Ohio as R.C. 1302.18(A). Moreover the Court of Appeals for Cuyahoga County applied R.C. 1302.18 by analogy to a contract for services involving an open price term in *Winning Sheet Metal Mfg. Co.* v. *Heat Sealing Equip. Mfg. Co.* (Sept. 30, 1982), Cuyahoga App. No. 44365, unreported, at 3-4.

The court therefore determined that a reasonable rate for Armco to pay to Oglebay for transporting Armco's iron ore during the 1986 shipping season was $6.00 per gross ton with an additional rate of twenty-five cents per gross ton when self-unloading vessels were used. The court based this determination upon the parties' extensive course of dealing, "* * * the detriment to the parties respectively, and valid comparisons of market price which reflect [the] economic reality of current depressed conditions in the American steel industry."

The court of appeals concluded that the trial court was justified in setting $6.25 per gross ton as a "reasonable rate" for Armco to pay Oglebay for the 1986 season, given the evidence presented to the trial court concerning various rates charged in the industry and given the intent of the parties to be bound by the agreement.

The court of appeals also held that an open price term could be filled by a trial court, which has the authority to review evidence and establish a "reasonable price," when the parties clearly intended to be bound by the contract. To support this holding, the court cited Restatement of the Law 2d, Contracts, *supra,* at 92, Section 33, and its comments, and 179, Section 362, and its comments.

Section 33, Comment *a* provides in part:

"* * * [T]he actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. In such cases courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain.

"An offer which appears to be indefinite may be given precision by usage of trade or by course of dealing between the parties. Terms may be supplied by factual implication, and in recurring situations the law often supplies a term in the absence of agreement to the contrary. * * *" *Id.* at 92.

As the court of appeals noted, we have held that "agreements to agree," such as the pricing mechanisms in the 1957 contract, are enforceable when the parties have manifested an intention to be bound by their terms and when these intentions are sufficiently definite to be specifically enforced. *Normandy Place Assoc., supra,* at 105-106, 2 OBR at 656, 356 N.E. 2d at 164. We have also held that "[i]f it is found that the parties intended to be

bound, the court should not frustrate this intention, if it is reasonably possible to fill in some gaps that the parties have left, and reach a fair and just result." *Litsinger Sign Co.* v. *American Sign Co.* (1967), 11 Ohio St. 2d 1, 14, 40 O.O. 2d 30, 37, 277 N.E. 2d 609, 619.

The court of appeals conducted an extensive review of the evidence presented to the trial court and concluded that the $6.25 per gross ton figure was a "reasonable rate" in this situation. The court of appeals noted that Oglebay presented evidence from Jesse J. Friedman, an economic and financial expert, who testified that $7.44 per gross ton was a reasonable rate for such services. Further evidence showed that Armco paid $5.00 per gross ton to Oglebay for the 1985 season, even though the published rate for that season was $7.41 per gross ton.

There was also testimony that Oglebay quoted Armco $5.66 per gross ton as the rate for the 1987 season. The evidence also showed that LTV Steel, prior to its bankruptcy renegotiations with Oglebay, had paid Oglebay the published rate of $7.41 per gross ton. Evidence also indicated that American Steamship Co. had quoted Armco a $5.90 per gross ton rate for the 1986 season.

The court of appeals concluded that the $6.25 per gross ton figure fell acceptably between the rate range extremes proven at trial. The court found this to be a reasonable figure. We find there was competent, credible evidence in the record to support this holding and affirm the court of appeals on this question.

### III

Armco also argues that the trial court lacks equitable jurisdiction to order the parties to negotiate or in the failure of negotiations, to mediate, during each annual shipping season through the year 2010. The court of appeals ruled that the trial court did not exceed its jurisdiction in issuing such an order.

3 Restatement of the Law 2d, Contracts (1981) 179, Section 362, entitled "Effect of Uncertainty of Terms," is similar in effect to Section 33 and states:

"Specific performance or an injunction will not be granted unless the terms of the contract are sufficiently certain to provide a basis for an appropriate order."

Comment *b* to Section 362 explains:

"* * * Before concluding that the required certainty is lacking, however, a court will avail itself of all of the usual aids in determining the scope of the agreement. * * * Expressions that at first appear incomplete may not appear so after resort to usage * * * or the addition of a term supplied by law * * *." *Id.* at 179.

Ordering specific performance of this contract was necessary, since, as the court of appeals pointed out, "* * * the undisputed dramatic changes in the market prices of great lakes shipping rates and the length of the contract would make it impossible for a court to award Oglebay accurate damages due to Armco's breach of the contract." We agree with the court of appeals that the appointment of a mediator upon the breakdown of court-ordered contract negotiations neither added to nor detracted from the parties' significant obligations under the contract.

It is well-settled that a trial court may exercise its equitable jurisdiction and order specific performance if the parties intend to be bound by a contract, where determination of long-term damages would be too speculative. See 3 Restatement of the Law 2d, Contracts, *supra,* at 171-172, Section

360(a), Comment *b*; *Columbus Packing Co.* v. *State, ex rel. Schlesinger* (1919), 100 Ohio St. 285, 294, 126 N.E. 291, 293-294. Indeed, the court of appeals pointed out that under the 1962 amendment, Armco itself had the contractual right to seek a court order compelling Oglebay to specifically perform its contractual duties.

The court of appeals was correct in concluding that ordering the parties to negotiate and mediate during each shipping season for the duration of the contract was proper, given the unique and long-lasting business relationship between the parties, and given their intent to be bound and the difficulty of properly ascertaining damages in this case. The court of appeals was also correct in concluding that ordering the parties to negotiate and mediate with each shipping season would neither add to nor detract from the parties' significant contractual obligations.

This is because the order would merely facilitate in the most practical manner the parties' own ability to interact under the contract. Thus we affirm the court of appeals on this question.

The court of appeals had before it competent, credible evidence from which to conclude that the parties intended to be bound by the terms of the contract, to conclude that the $6.25 per gross ton figure was a "reasonable rate" under the circumstances, and to conclude that the trial court's exercise of continuing equitable jurisdiction was proper in this situation. Accordingly, we affirm the decision of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.