OPINION
{¶ 1} Defendants-appellants Vermillion Shores Development Group, Inc. and Pinewood Construction, Inc. appeal the September 29, 2004 Judgment Entry of the Stark County Court of Common Pleas granting judgment in favor of plaintiff-appellee Smith Paving Excavating.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In late 2001, appellants Vermillion Shores Development Group, LLC ("Vermillion Shores") and Pinewood Construction, Inc. ("Pinewood") contracted to develop real property owned by appellant Vermillion Shores for commercial and residential purposes. Pinewood agreed to act as the general contractor for the project.
 {¶ 3} Pinewood then sought bids from subcontractors interested in performing the concrete roadway work required for the project. Appellee Smith Paving Excavating, Inc. ("Smith Paving") submitted a bid on February 19, 2002, after being provided with copies of the project drawings and specifications. Pursuant to the bid, appellants were to install 5,690 square yards of 7" pavement, 2480 square yards of 6" pavement, 4195 linear feet of curb, 6,680 square feet of 4" walk with an additional 795 linear feet of curb. The bid also indicated the cost for materials and labor would be $194,861.00 and prices would be good for thirty days from receipt of the proposal. At the time the bid was submitted, the plan specifications had not been finalized or approved by Vermillion Shores, Pinewood or the governmental agencies responsible for approving the same. Governmental approvals and permits authorizing Pinewood to commence the concrete portion of the work quoted by appellee had not been issued or obtained.
 {¶ 4} Appellants accepted Smith Paving's bid, and on March 1, 2002, the parties executed a Subcontract Agreement. The agreement required appellee to perform the quoted work at a contract price of $194,861.00, the price contained in appellee's February 19, 2002 bid. The agreement stated the contract price represented appellee's work "pursuant to the Subcontract, subject to modification only in writing, as provided in this Subcontract." The agreement further required appellee "prepare and submit a `Schedule of Values' in advance of starting Work for approval by Contractor." Appellee did not submit a "Schedule of Values," nor did appellant ever approve the same.
 {¶ 5} The Subcontract Agreement provided the scope of the work to be performed by appellee included "Agreement of cost work to be performed per plan and attached Sub-Contract quote." No additional contract documents, nor work or project description were ever provided. The agreement also required appellee submit to Pinewood "shop drawings" for review and approval by the Contractor within one week of receipt of the agreement. Appellee never submitted the "shop drawings." Finally, the parties indicated in the agreement the date on which Smith Paving was to complete the concrete project was "to be set."
 {¶ 6} Appellants never provided Smith Paving with a commencement date, and after a significant lapse of time, Smith Paving's foreman traveled to the job site and discovered the work had been completed by a third-party. Appellants assert the scope of the project changed significantly, and the changes were not contemplated in Smith Paving's quotation. Appellants contend the changes necessitated additional work and costs; therefore, they contacted another company who performed the work and invoiced appellants the sum of $378,897.
 {¶ 7} Appellee initiated this action on September 16, 2003, alleging breach of contract, claiming damages in the amount of $700 for the estimation costs and an additional $38,535.40 for lost profit. The parties agreed to submit the matter to the trial court on the briefs. On September 29, 2004, the trial court, via Judgment Entry, entered judgment in favor of appellee.
 {¶ 8} Appellants now appeal the September 29, 2004 Judgment Entry, assigning as error:
 {¶ 9} "I. The trial court erred as a matter of law in finding that appellants breached the march 1, 2002 subcontract agreement.
 {¶ 10} "II. The trial court erred as a matter of law in awarding damages to appellee based upon the quotation submitted by appellee and appellants since the scope of the work had changed significantly."
 I, II {¶ 11} Appellants' assignments of error raise common and interrelated issues; therefore, we will address the assignments together.
 {¶ 12} Appellants argue the trial court erred in finding they breached the March 1, 2002 subcontract agreement, and in awarding damages as a result thereof. We disagree.
 {¶ 13} Appellants maintain the subcontract agreement was nothing more than an "agreement to agree," as it was based upon preliminary specifications and drawings and Smith Paving was required to submit additional documentation prior to commencing work on the project. Appellants cite Smith Paving's own quotation providing the prices were good for only thirty days from the date of the proposal.
 {¶ 14} In Oglebay Norton Company v. Armco, Inc. (1990),52 Ohio St.3d 232, 556 N.E.2d 515, the Ohio Supreme Court found an "agreement to agree" is enforceable if the parties have manifested an intention to be bound by the terms, and when the terms are sufficiently definite they may be enforced.
 {¶ 15} Upon review of the statement of facts above, the subject matter of the contract was certain and definite. The subcontract agreement did not contemplate a "preliminary phase" of the project, but rather the project terms were sufficient to bind the parties. Accordingly, appellants breached the contract by hiring the third-party contractor to complete the work.
 {¶ 16} As to appellants' arguments with regard to the trial court's award of damages, the general test in the State of Ohio for the recovery of lost profits is set forth in Charles R. Combs Trucking, Inc. v.Internatl. Harvester Co. (1984), 12 Ohio St.3d 241, at paragraph two of the syllabus: "Lost profits may be recovered by the plaintiff in a breach of contract action if: (1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty." The Court further expounded on the third prong of the Combs test, stating "[i]n order for a plaintiff to recover lost profits in a breach of contract action, the amounts of lost profits, as well as their existence, must be demonstrated with reasonable certainty. * * *" Gahannav. Eastgate Properties, Inc. (1988), 36 Ohio St.3d 65, 521 N.E.2d 814, syllabus.
 {¶ 17} The subcontract agreement contemplated a specific amount of work for a specific price. Appellee's damages were the loss profits contemplated under the original contract, without consideration of the additional work performed when the project was actually completed by a third-party. The trial court awarded appellee $38,535.40 as lost profits due to the breach of the subcontract agreement, noting appellants did not provide any evidence to contradict the award. Accordingly, the award of damages was not remote or speculative, and was reasonably certain.
 {¶ 18} Appellants' first and second assignments of error are overruled.
 {¶ 19} The September 29, 2004 Judgment entry of the Stark County Court of Common Pleas is affirmed.
Boggins, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the September 29, 2004 Judgment entry of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellants.