[Cite as *Borkey v. J.F. Glaze Cleveland L.L.C.*, 2014-Ohio-3727.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100834

# FREDERICK A. BORKEY

### PLAINTIFF-APPELLANT

vs.

# J.F. GLAZE CLEVELAND L.L.C., ET AL.

### DEFENDANT-APPELLEE

## JUDGMENT:
### AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-10-720739

**BEFORE:** E.A. Gallagher, J., S. Gallagher, P.J., Keough, J.

**RELEASED AND JOURNALIZED:** August 28, 2014

**ATTORNEY FOR APPELLANT**

Rodger A. Pelagalli
Law Offices of Rodger A. Pelagalli
6659 Pearl Road
Suite 401
Middleburg Heights, Ohio 44130


**ATTORNEY FOR APPELLEE**

Brian R. Moriarty
1370 Ontario Street
Suite 2000
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, J.:

{¶1} Appellant Frederick A. Borkey ("Borkey") appeals the judgment of the Cuyahoga County Court of Common Pleas on his motion to show cause/ motion to enforce. After a review of the record and applicable law, we affirm.

{¶2} Borkey and appellant J.F. Glaze Cleveland, L.L.C. entered into an agreement for the sale of Jack Frost Donuts in April 2008. This agreement included a non-compete clause. After the deal failed to proceed as planned, litigation between Borkey and J.F. Glaze began on March 10, 2010. A settlement agreement was reached and accepted by the trial court in January 2013. The agreement purported to resolve all claims between the parties regarding the disputes stemming from the sale. The agreement provided for the execution of a non-compete agreement and set forth terms for the parties in the event that the real property on which the business is situated is transferred or not transferred pursuant to a separate sales agreement for the real property between the parties. The non-compete agreement was executed.

{¶3} On July 9, 2013, Borkey filed a motion to show cause/motion to enforce the settlement agreement alleging that the failure to execute a new non-compete agreement and failure to transfer the property to Borkey constituted a breach of the settlement agreement.

{¶4} On December 2, 2013, the trial court determined that the issue of the non-compete agreement was moot because, during the course of a hearing on the matter, the parties executed a second non-compete agreement. The trial court further noted that the settlement agreement did not include an agreed upon date by which the property would transfer and, therefore, the trial court determined that the property was to transfer

within a "reasonable" time. To effectuate the transfer, the trial court crafted an equitable solution to the problem: the property must transfer to Borkey by January 1, 2014, or the purchase price of $35,000 was to reduce by $500 each month the property did not transfer. In the event that the property was not transferred within six months, the trial court reserved the right to impose further sanctions. The property has since transferred to Borkey. Borkey appeals asserting the following sole assignment of error:

> The trial court erred in failing to enforce the clear, reasonable and unambiguous settlement agreement.

{¶5} Borkey first argues that the trial court erred in concluding the issue regarding the non-compete agreement to be moot after the parties executed a second non-compete agreement with the assistance of the court. The settlement agreement provides that:

> In the event that such agreement are [sic] not executed within ten business days of mailing to [appellee's counsel], Fred Borkey shall owe nothing to [appellee] whether the real property transfers or not, and Fred Borkey shall own all assets including the recipes for the starter dough, icings, and creams.

{¶6} First, we note that there does not appear to be any dispute that the parties had already entered into a non-compete agreement prior to the settlement agreement, and there is no evidence that appellee has failed to comply with that non-compete agreement. When the trial court examined this matter at the hearing, the parties set blame on each other for failing to properly communicate after the settlement hearing regarding a proposed new non-compete agreement.

{¶7} Even if the non-compete provision was not satisfied by the parties' previous

non-compete agreement, we find the provision in the settlement agreement to be so lacking in detail that it would be nearly impossible to enforce. Ohio has long recognized the general validity of preliminary agreements. *See, e.g.*, *Normandy Place Assocs. v. Beyer*, 2 Ohio St.3d 102, 105, 443 N.E.2d 161 (1982), *overruled on other grounds,* citing to *Rhodes v. Baird*, 16 Ohio St. 573, 1866 Ohio LEXIS11 1 (Dec 1866).

> It is thus not the law that an agreement to make an agreement is per se unenforceable. The enforceability of such an agreement depends rather on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced.

*Id.* at 105-106. "The actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon." (Citations omitted.) *Oglebay Norton Co. v. Armco*, 52 Ohio St.3d 232, 236, 556 N.E.2d 515 (1990). Therefore, a trial court must consider whether the parties manifested a sufficiently definite intention to be bound such that an agreement would be specifically enforceable or whether they merely negotiated toward a formal contract without ever reaching it. *Id.*

{¶8} If we were to construe the settlement agreement as requiring a new non-compete agreement, it is little more than an agreement to agree without description of any of the material terms in which the parties would be agreeing. It would be nonsensical to construe the settlement agreement as requiring a new non-compete agreement to replace the first without any details on what the terms of the new agreement would be. Such a construction would call into question whether the parties manifested a sufficiently definite intention to be bound to the settlement agreement.

{¶9} We cannot say the trial court erred in refusing to construe the poorly drafted

settlement agreement in this manner and, in any event, the parties did enter into a new non-compete agreement at the hearing, thus resolving any outstanding dispute. There is no indication that the trial court forced Borkey to enter into the agreement under duress. If Borkey truly wished to further pursue this issue he should not have entered into a valid new contract on the matter and, as such, the trial court did not err in concluding the question of the nebulous non-compete to be moot.

{¶10} Borkey's second argument is that the trial court erroneously supplanted the clear, reasonable and unambiguous terms of the settlement agreement by inserting a $500 per month failure to transfer penalty as opposed to Borkey's proposed resolution that was to find the appellee in breach of the agreement and hold that the property be transferred to Borkey without Borkey having to pay anything. As the trial court pointed out at the hearing, it is unclear where the settlement agreement provides for the forfeiture that Borkey believes is appropriate.

{¶11} This is the second instance where the settlement agreement appears to be lacking. There is no specific penalty provision or associated timeline for the property to be transferred. Instead the agreement provides in pertinent part:

> In the event that the previously noted real properties transfer pursuant to the previously noted purchase agreements to Fred Borkey, Fred Borkey shall pay to the Defendants Thirty-Five Thousand Dollars ($35,000) over 24 months; in the event that the transfer does not occur, the Defendants shall do all required of them to release the money held in escrow to Fred Borkey, and Fred Borkey will be released by all the Defendants under the Documents noted above, and as further noted herein.
>
> * * *
>
> 2. Payment. In consideration of this agreement, and if the real properties noted above transfer to him with good and clear title, Mr. Borkey shall pay to the Defendants the total sum of Thirty-Five Thousand Dollars ($35,000)

to the Defendants   * * * over a 24 month period after the real property noted above transfers good and clear title to Mr. Borkey.

It is understood and agreed between the settling parties that the payment noted above is contingent upon the transfer of the real property * * *.

In the event that said real property does not transfer to Fred Borkey, pursuant to the prior settlement agreement and purchase agreements for the real property, the payment above and any and all other payments which may have been due to the Defendants shall be deemed paid in full, and all assets pursuant to the Documents shall be titled in the name of Fred Borkey, including the equipment, the recipes, and any and all other assets that were part of the Documents for the sale of the Jack Frost Donut business.   Fred Borkey shall owe nothing more to the Defendants.

**{¶12}** The contract fails to provide any explanation in regards to what amount of time would have to pass such that appellee would be deemed to have defaulted into the failed transfer provision.   In light of this defective gap in the settlement agreement, the remedy fashioned by the trial court appears to be a very reasonable correction of a missing term: the time frame applicable to the above provisions. Pursuant to the trial court's order, in the event that non-transfer persisted for more than a month after the hearing, the $35,000 purchase price would reduce over five months culminating in the trial court's statement that it would readdress the matter further should transfer not be accomplished after six months.   The trial court at that time could enforce a further penalty including, and up to, the full amount of the purchase price as Borkey presently seeks.

**{¶13}** However, this entire discussion becomes theoretical at this point because it

is undisputed that the transfer of the property has indeed occurred. The sole question remaining is whether the trial court's interpretation of the contract and its provision of the missing time frame term was contrary to law. The Ohio Supreme Court has stated that, "[i]f it is found that the parties intended to be bound, the court should not, frustrate this intention, if it is reasonably possible to fill in some gaps that the parties have left, and reach a fair and just result." *Litsinger v. Am. Sign Co.*, 11 Ohio St.2d 1, 14, 227 N.E.2d 609 (1967), citing 1 *Corbin on Contracts*, 400 - 406, Section 95. In this instance we believe the trial court's fashioned remedy complied with the rule of *Litsinger* in that it reasonably filled in a gap left in the settlement agreement. The court did not change any of the essential terms of the agreement but rather provided a helpful incentive to appropriately hasten the resolution clearly contemplated by the agreement.

{¶14} Borkey's sole assignment of error is overruled.

{¶15} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR