[Cite as *Stephen Dev. Co. vs. DTB Land Dev., LLC*, 2012-Ohio-1493.]


COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STEPHEN DEVELOPMENT COMPANY | JUDGES:<br>Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellant | Hon. John W. Wise, J.<br>Hon. Julie A. Edwards, J. |
| -vs- | |
| DTB LAND DEVELOPMENT, LLC | Case No. 2011CA00153 |
| Defendant-Appellee | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Case No. 2010CV00740 |


| | |
|---|---|
| JUDGMENT: | Affirmed |


| | |
|---|---|
| DATE OF JUDGMENT: | March 26, 2012 |


APPEARANCES:

| For Plaintiff-Appellant | For Defendant-Appellee |
|---|---|
| JOHN A. MURPHY, JR.<br>KRISTEN S. MOORE<br>Millennium Centre, Suite 300 | OWEN J. RARRIC<br>4775 Munson Street, NW<br>P.O. Box 36963 |

200 Market Avenue North                                      Canton, OH  44735
P.O. Box 24213
Canton, OH  44701

*Farmer, J.*

{¶1}   On September 17, 2008, appellee, DTB Land Development, LLC, entered into a purchase agreement to purchase a commercial real estate building named the Renaissance Centre, from appellant, Stephen Development Company.  The agreement listed the "amount to be financed" was "to be determined."

{¶2}   In December of 2008, appellee terminated its agreement with appellant.

{¶3}   On February 22, 2010, appellant filed a complaint against appellee for breach of contract.  Appellee filed a counterclaim for return of its $25,000.00 deposit. Both parties filed motions for summary judgment.  By judgment entry filed June 13, 2011, the trial court concluded the agreement was not enforceable, finding the agreement's failure to include an essential term "manifested a lack of intention by the parties and a failure of a meeting of the minds."  The trial court denied appellant's motion and granted appellee's motion, awarding appellee $25,000.00 plus interest and costs.

{¶4}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶5}   "THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN DETERMINING THAT THE PURCHASE AGREEMENT WAS NOT A LEGALLY ENFORCEABLE CONTRACT."

II

{¶6} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN DETERMINING THAT APPELLEE WAS EXCUSED FROM PERFORMANCE UNDER THE PURCHASE AGREEMENT DUE TO THE FINANCING PROVISION WHEN THAT PROVISION GAVE ONLY STEPHEN DEVELOPMENT THE RIGHT TO VOID THE PURCHASE AGREEMENT."

III

{¶7} "THE TRIAL COURT ERRED IN DENYING STEPHEN DEVELOPMENT'S MOTION FOR SUMMARY JUDGMENT WHEN THE UNDISPUTED FACTS DEMONSTRATE THAT APPELLEE WAS ABLE TO ARRANGE FINANCING."

IV

{¶8} "IN THE ALTERNATIVE, THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHEN GENUINE ISSUES OF MATERIAL FACT REMAIN."

{¶9} Appellant's four assignments of error challenge the trial court's granting of summary judgment to appellee.

{¶10} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

{¶11} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is

adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."

{¶12} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35.

{¶13} The trial court based its decision on two points. First, the purchase agreement was not enforceable as a matter of law because the agreement failed to include a specific amount to be financed. The trial court found such a failure demonstrated a lack of intention by the parties resulting in a failure of a meeting of the minds. The trial court concluded the "amount to be financed" was an essential term of the agreement.

{¶14} The second issue involved the financing contingency in the agreement. The trial court concluded the lack of specificity as to the financing granted appellee "the right to determine what financing was appropriate and to ultimately decide that the proposed financing was unacceptable." See, Judgment Entry filed June 13, 2011.

I

{¶15} Appellant claims the trial court erred as a matter of law in determining the purchase agreement was not enforceable. Specifically, appellant claims the trial court failed to analyze the parties' intent or reasonableness in filling in the missing terms (amount of financing). We disagree.

{¶16} Appellant argues the purchase agreement was legally enforceable and binding upon the parties. In support, appellant cites this court's opinion in *Miller v. Murday* (1989), Licking App. No. CA-3398, wherein this court noted:

{¶17} "Generally, a liberal construction should be put upon written instruments so as to uphold them, if possible, and carry into effect the intention of the parties. Courts are required, by applying known rules of law, to enforce valid and reasonable contracts of parties, with the view of carrying out their clear intent, rather than, by resorting to technical construction, to render such contracts void. A contract should be given that construction that will uphold it and preserve to the parties thereto their rights, if the same can be done without doing violence to the language of the contract. Whenever the language of a contract will permit, it should be so construed as to support rather than to destroy legal obligation or as it is sometimes stated, 'ut res magis valeat quam pereat.' Wherever possible, such a construction will be given as to render the contract legal and effective rather than one which renders it void."

{¶18} It is appellant's position that the absence of the "amount to be financed" was not an essential term of the contract:

{¶19} "As a general rule, parties cannot enter into an enforceable contract unless they come to a meeting of the minds on the essential terms of the contract. *Alligood v. Proctor & Gamble Co.* (1991), 72 Ohio App.3d 309. The essential terms of a contract have been identified as 'the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term and a price term.' *Id.*" *Fairfax Homes, Inc. v. Blue Belle, Inc.,* Licking App. No. 2007CA00077, 2008-Ohio-2400, ¶19.

{¶20} Appellee argues the specific omission of the "amount to be financed" with the language "to be determined" establishes there was not a meeting of the minds. In support, appellee cites the case of *Anchor v. Jones* (1992), Lorain App. No. 91CA005109, wherein our brethren from the Ninth District stated the following:

{¶21} "An agreement is enforceable if it encompasses the essential elements of the bargain and if it provides a basis for determining the existence of a breach and for giving an appropriate remedy. *Mr. Mark Corp. v. Rush, Inc.* (1983), 11 Ohio App.3d 167. A court will give an effect to a contract's words; it will not delete words or use words not used. *Cleveland Elec. Illuminating Co. v. Cleveland,* 37 Ohio St.3d 50, paragraph three of the syllabus, rehearing denied (1988), 38 Ohio St.3d 704. The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intent is not intended to be understood as an offer or acceptance. *Mr. Mark Corp., supra* at 169, citing Restatement of the Law 2d, Contracts (1981) 92, Section 33(3). Based upon these principles, the court could properly hold that there was not a meeting of the minds on the amount to be financed, an essential term of the agreement."

{¶22} This conclusion bears upon the facts in this case. The specific negotiated language of the agreement sub judice states the "amount to be financed" is "to be determined" and lists the following contingences at ¶6:

{¶23} "(a) ENVIRONMENTAL INSPECTION: Owner agrees to permit the Purchaser, the Purchaser's lender and the qualified professional environmental consultant of either of them to enter the Premises to conduct, at the expense of the Purchaser, an environmental site assessment. This Assessment report must be

completed within 30 days of the execution of this Agreement. Purchaser agrees if such assessment is obtained and the consultant recommends further inspection to determine the extent of suspected contamination or recommends remedial action, the Purchaser, at Purchaser's option, may notify the Owner in writing, with a copy of the report attached, within five (5) business days after receipt by Purchaser of a copy of the environmental site assessment report, that the Contract is null and void. Does Apply [Marked & Initialed] Does Not Apply _____

{¶24} "(b) FINANCING CONTINGENCY: Purchaser agrees to use his best efforts to obtain above loan, including complying with lender's requests. Purchaser will make loan application within 21 days after date of receipt by Purchaser of fully executed copy of this Agreement, and Purchaser shall obtain a written loan commitment within 60 days after date of such receipt. If Purchaser has failed either to make loan application or obtain a written loan commitment within the time periods set forth above, this agreement, at Seller's written election, shall be deemed null and void and all monies in trust shall be returned to Purchaser without further liability by, between and among Seller, Purchaser and REALTOR. If financing cannot be arranged, all monies shall be returned to Purchaser." See, Commercial/Industrial Real Estate Purchase Agreement, attached to Ross Deposition as Defendant's Exhibit Ross I.

{¶25} Appellant's manager, William Ross, stated the financing was to be a conventional commercial lending arrangement of 70 or 80%, but it was not included in the terms of the agreement. Ross depo. at 108-109. Mr. Ross further acknowledged the October 27, 2008 communication between James Powers, the loan officer for

Huntington Bank, and Thomas Lazarides, appellant's real estate agent, did not include the amount of financing offered by Huntington Bank to appellee. Id. at 111; Exhibit L.

{¶26} The undisputed fact was that appellant received financing, but found the financing unacceptable, thereby resulting in a termination of the agreement by appellee in December of 2008, some three months after the signing of the agreement.

{¶27} The specific terms of the financing contingency paragraph in the agreement refers to "best efforts" to obtain financing. We conclude from this language and the inclusion of financing as a contingency that as in *Anchor,* supra, financing was an essential element of the contract and the trial court did not err in finding the contract was not enforceable.

{¶28} Assignment of Error I is denied.

II, III

{¶29} Appellant claims the trial court erred in finding appellee was excused from performance due to the financing issue. We disagree.

{¶30} Appellant argues the agreement gave the seller the sole right to terminate the contract as cited in ¶6, supra. However, the specific caveats to the financing contingency are the purchaser's "best efforts" and purchaser to make a loan application and receive a written loan commitment within certain time periods as set forth in the agreement, notwithstanding the fact that ¶6 provides that the seller may declare the agreement null and void because of a failure to obtain financing and shall return all monies to purchaser.

{¶31} Theodore Sanders, one of appellee's owners, testified prior to the agreement, an on-going discussion was held with Huntington Bank relative to the

purchase of the Renaissance Centre and financing. Sanders depo. at 141-143. The first negotiation was for 100% financing by Huntington which was not formalized. Id. at 150. This 100% negotiation continued throughout the dealings with the bank. Id. at 156. Also involved was the need to increase by one million dollars a line of credit to one of appellee's businesses, Atlantic Financial Company, which the bank rejected. Id. at 154, 164. Eventually, the Atlantic line of credit went to Wells Fargo. Id. at 178. From the beginning, appellee wanted 100% financing. Id. at 174. Financing was available for a one year note which would require refinancing in one year. Id. at 177. Huntington refused 100% financing and offered 80/20%. without funds for improvements. Id. at 182, 188-191. Appellee did not have the money for the 20%. Id. at 192-193, 195. Mr. Sanders signed the agreement with the intention of securing 100% financing as 80/20% was not possible. Id. at 195.

{¶32} It is clear that ¶6 gives both appellant and appellee the right to terminate the agreement. The evidence is also clear that appellee was wedded to 100% financing, there was a downturn in the climate of appellee's businesses (automobile sales), and Huntington denied increasing the line of credit for Atlantic, one of appellee's businesses and a would-be renter in the Renaissance Centre.

{¶33} All these factors lead to financing for appellee being unavailable. One might argue that appellant's position is that once any financing is available, regardless of its costs, appellee was bound to fulfill the agreement. Without the inclusion of an "amount to be financed" in the purchase agreement, this argument is without merit.

{¶34} Assignments of Error II and III are denied.

IV

{¶35} Appellant claims genuine issues of material fact exist regarding the fulfillment of ¶6 and therefore summary judgment was not appropriate. We disagree.

{¶36} Appellant argues there are questions of fact as to whether appellee made a loan application within twenty-one days or received a written commitment within sixty-days, whether appellee made "best efforts," and whether Huntington's terms were such that appellee had financing.

{¶37} Because the financing terms of the agreement were left open to the discretion of appellee, appellant was bound by appellee's decision to reject the Huntington financing. As demonstrated by Mr. Sander's deposition testimony at 173, Atlantic's line of credit and the real estate purchase were intertwined. The rejection of one part, Atlantic's line of credit increase, and the switch to Wells Fargo created a financial climate that appellee found to be unacceptable.

{¶38} Although one could interpret the independent facts differently, the conclusion does not change. As Mr. Sander's stated in his deposition, appellee required a 100% financing deal only.

{¶39} Upon review, we find the trial court did not err in granting summary judgment to appellee.

{¶40} Assignment of Error IV is denied.

{¶41} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, P.J.

Wise, J. concur and

Edwards, J. concurs separately.


_s/Sheila G. Farmer_____


_s/ John W. Wise_____


_____

                     JUDGES

SGF/sg 201

EDWARDS, J., CONCURRING OPINION

{¶42} I concur with the majority except regarding the analysis of the second, third and fourth assignments of error.

{¶43} I do not find as the majority does, that it is clear that either the buyer or seller have the right to terminate the agreement. If I were to find that this is an enforceable contract, despite the missing financial terms, I would interpret the financing contingency to require the buyer to use his best efforts to obtain the loan, and, if <u>reasonable</u> financing cannot be arranged, all monies shall be returned to purchaser.

{¶44} Appellant, in its brief, indicates that if this is the conclusion reached by the court, then a jury should decide whether the buyer used his best efforts to obtain a reasonable financing deal. While I agree that that would generally be a jury decision, the information presented to the trial court so clearly points to the conclusion that reasonable financing was not available that I find no error in the granting of the summary judgment on this ground.

_____

Judge Julie A. Edwards

JAE/rmn

[Cite as *Stephen Dev. Co. vs. DTB Land Dev., LLC*, 2012-Ohio-1493.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STEPHEN DEVELOPMENT COMPANY | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DTB LAND DEVELOPMENT, LLC | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 2011CA00153 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.  Costs to appellant.

_s/Sheila G. Farmer_____


_s/ John W. Wise_____


s/ Julie A. Edwards_____

JUDGES