[Cite as *Kertes Ents., L.L.C. v. Sanders*, 2021-Ohio-4308.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| KERTES ENTERPRISES, L.L.C., | : | |
| Plaintiff-Appellant, | : | No. 109584 |
| v. | : | |
| STEVE SANDERS, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 9, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-885535

***Appearances:***

Berns, Ockner & Greenberger, L.L.C., Jordan Berns, and
Paul M. Greenberger, *for appellant*.

David J. Horvath, *for appellees*.

EMANUELLA D. GROVES, J.:

{¶ 1} Plaintiff-appellant Kertes Enterprises, L.L.C. ("Kertes"), appeals the trial court's decision granting summary judgment in favor of defendants-appellees Steve ("Steve") and Mirica ("Mirica") Sanders (collectively "the Sanders") and

denying its motion for summary judgment on Kertes' breach-of-contract claim. For the following reasons, we affirm.

## Facts and Procedural History

{¶ 2} This is the second appeal before this court between the above parties. The factual background and procedural history are comprehensively set forth in the prior appeal. *Kertes Ents., L.L.C. v. Sanders*, 2019-Ohio-2237, 137 N.E.3d 733 (8th Dist.) ("*Kertes I*"). For consistency, we adopt and include relevant portions below:[1]

> On or about May 25, 2016, the parties executed an agreement titled "Purchase Agreement — Offer, Receipt and Acceptance" ("the agreement"). The agreement pertains to the purchase of residential property. The property at issue is a newly built, single-family home in Orange Village, Ohio ("the property"). The agreement set forth a purchase price of $685,000 and required a deposit of $7,000 as earnest money. The closing date for transfer of the property was to be on or about July 8, 2016. The following additional term and condition appears in handwriting on the agreement: "Parties agree to execute [within] 5 days the builder's purchase agreement [and] addendums[.] (Builders agree to build out basement at builder's cost subject to both parties)[.]" {The Sanders believed that the "purchase agreement" was a "letter of intent" to purchase the property, removing it from the market until they had an opportunity to read and review the builder's purchase agreement ("BPA"). They believed that if they disagreed with the terms of the BPA that they could either attempt to negotiate those terms or refuse to proceed with the purchase of the property.}
>
> Subsequent to the execution of the agreement, the Sanders paid the earnest money into escrow. The [BPA] was not provided to the Sanders within five days, but was provided several days later, and the Sanders found certain obligations imposed therein objectionable, which they assert included a {$3,500} capital contribution, a $200 per month increase in monthly fees not previously disclosed, and other issues. {After attempting to negotiate the terms of the BPA,} [t]he Sanders notified Kertes verbally on June 10, 2016, and in an email on

---

[1] We have set off our additions to the narrative with these in braces: {}.

June 29, 2016, that they would not be moving forward with the purchase, and they requested a release of the earnest money.

* * *

On September 6, 2017, Kertes filed a complaint that raised a breach-of-contract claim against the Sanders. Kertes alleged that the parties entered into a purchase agreement under which Kertes agreed to sell and the Sanders agreed to buy real estate [to wit:] a house located in Orange Village, Ohio, and that the Sanders breached the agreement by refusing to close on the transaction. Kertes sought damages in the amount of $84,637.92 plus interest, costs, and attorney fees.

The Sanders filed an answer in which they admitted entering into the agreement [but did not admit to the enforceability of the contract]. They raised a number of affirmative defenses, including, among others, that the contract is void for fraudulent representation, that the contract is void because the plaintiff is not the proper party in interest, and want of condition precedent. The Sanders included a counterclaim that raised causes of action for intentional infliction of emotional distress, declaratory relief that the contract be declared void and unenforceable for want of a proper party, fraudulent misrepresentation, and violation of the Ohio Consumer Sales Practices Act.

Kertes filed a motion for partial summary judgment seeking judgment in its favor on all of the counterclaims and on its claim for breach of contract, except reserving the issue of damages for trial. Kertes argued that the agreement entered by the parties was legally binding, that Kertes performed its material obligations under the agreement, that the Sanders breached the agreement by refusing to purchase the property, and that it was damaged by the reduced sale price of the property after using commercially reasonable efforts to minimize damages. Kertes also set forth arguments pertaining to the counterclaims.

The Sanders also filed a motion for summary judgment. They argued that the agreement was nothing more than a contract to make a contract, that the agreement was intended to be an option contract, and that condition precedents and contingencies were not satisfied and relieved them of performance. They further argued that the contract was unenforceable because Kertes did not own the property at the time the agreement was executed and the agreement was rescinded before Kertes obtained title. They also presented arguments in support of their

claims for fraudulent misrepresentation and violation of the Ohio Consumer Sales Practices Act.

On the motion for partial summary judgment filed by Kertes, the trial court found Kertes was not entitled to summary judgment on the breach of contract claim and on the counterclaim for declaratory relief. The court granted summary judgment in favor of Kertes on the counterclaims for intentional infliction of emotional distress, fraudulent misrepresentation, and for violations of the Ohio Consumer Sales Practices Act; the court dismissed those counterclaims. The Sanders [did not] appeal the dismissal of those counterclaims.

On the motion for summary judgment filed by the Sanders, the trial court granted summary judgment in favor of the Sanders on the counterclaim for declaratory relief. The trial court held that "the purchase agreement entered into between the parties on 05/25/2015 is hereby declared void." The court further ordered a return of the earnest money to the Sanders. The trial court's decision to declare the contract void effectively resolved the plaintiff's claim for breach of contract and created a final, appealable order for review.

*Id.* at ¶ 2-10.

**Kertes' First Appeal**

{¶ 3} Kertes appealed the decision of the trial court, arguing that the trial court erred in granting the Sanders' motion for summary judgment on their counterclaim for declaratory relief and finding the agreement void. Kertes also argued that the trial court erred in denying Kertes' motion for summary judgment on its breach-of-contract claim.

{¶ 4} We reversed the trial court's decision to grant summary judgment in favor of the Sanders on their counterclaim for declaratory relief and to declare the agreement void. *Id.* at ¶ 22. We further found that the agreement was not void for want of a proper party. *Id.* As the Sanders failed to file a cross-appeal on the trial court's grant of summary judgment to Kertes on their counterclaims, we affirmed

summary judgment in favor of Kertes as to those issues. *Id.* We declined to address Kertes' argument that its motion for summary judgment should have been granted, finding that issue was not ripe for appeal. *Id.* at ¶ 23.

**Proceedings on Remand**

{¶ 5} On remand, the parties filed supplemental briefs in support of their summary judgment motions. The parties essentially agreed that the only remaining issues were (1) whether there was a contract, and (2) whether a breach occurred by either party.[2] The trial court denied Kertes' motion for partial summary judgment again and granted the Sanders' motion for summary judgment on Kertes' breach-of-contract claim finding that there were no genuine issues of material fact and that the Sanders were entitled to judgment as a matter of law. The basis for the decision was that the additional term and condition requiring execution of the BPA was intended to be a material term and that Kertes breached the contract by failing to timely provide and allow for review of the BPA.

{¶ 6} Kertes now appeals assigning the following errors for our review:

**Assignment of Error No. 1**

The trial court erred in finding that language included in the parties' written, executed, and integrated contract for the purchase and sale of real property providing for subsequent execution of a "builders purchase agreement" was intended to be a material term and that Appellant breached the parties' contract by failing to "timely" provide the builders form of purchase agreement to Appellees. *(2/27/20 Journal Entry)*

---

[2] In their supplementary brief below, Kertes argued that the second issue is solely whether the Sanders breached the contract.

## Assignment of Error No. 2

The trial court erred in denying Plaintiff-Appellant's Motion for Partial Summary Judgment on its Complaint for breach of contract. (*2/27/20 Journal Entry*)

## Law and Analysis

{¶ 7} Since the assignments of error are related, we will address them together. In the first assignment of error, Kertes argues that the trial court erred in granting summary judgment in favor of the Sanders on Kertes' breach-of-contract claim. Kertes argues that, while the trial court was correct in finding that there was a contract, the trial court erred in finding that the handwritten term on the face of the contract was material and that Kertes breached that term. In the second assignment of error, Kertes argues that it established all the elements of breach of contract and that the trial court erred in failing to grant their motion for summary judgment.

## Standard of Review

{¶ 8} We review an appeal from a summary judgment under a de novo standard. *Khalia Ra v. Swagelok Mfg. Co., L.L.C.,* 8th Dist. Cuyahoga No. 109789, 2021-Ohio-1657, ¶ 16, citing *Montgomery v. Greater Cleveland Regional Transit Auth.,* 8th Dist. Cuyahoga No. 109559, 2021-Ohio-1198, ¶ 18, citing *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Therefore, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment was appropriate. *Id.*

{¶ 9} Pursuant to Civ.R. 56(C), summary judgment is warranted when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, the moving party is entitled to summary judgment. *Id.* at ¶ 17. "Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E)." *Id.*, quoting *Mattress Matters, Inc. v. Trunzo*, 2016-Ohio-7723, 74 N.E.3d 739, ¶ 10 (8th Dist.).

{¶ 10} In the instant case, the trial court determined that based on the intent of the parties a contract existed, that the provision that required the execution of the BPA within five days was a material term of the contract, and that Kertes breached the contract by failing to timely present the BPA.

{¶ 11} A breach of contract is established when a party shows (1) the existence of a contract; (2) that the nonbreaching party performed on the contract; (3) that the breaching party failed to perform its contractual obligations without legal excuse; and (4) the nonbreaching party suffered damages flowing from the breach. *Holliday v. Calanni Ents.,* 8th Dist. Cuyahoga No. 110001, 2021-Ohio-2266, ¶ 20, citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994).

**Existence of Contract**

{¶ 12} "Contract formation requires an offer, acceptance, consideration, and mutual assent between two or more parties with the legal capacity to act." *Widok v. Estate of Wolf*, 8th Dist. Cuyahoga No. 108717, 2020-Ohio-5178, ¶ 52, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. "*A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract.*" (Emphasis sic.) *Kertes I* at ¶ 19, quoting *Kostelnik* at ¶ 16. The essential terms of a contract are the "identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term." *Fairfax Homes, Inc. v. Blue Belle, Inc.*, 5th Dist. Licking No. 2007CA00077, 2008-Ohio-2400, ¶ 19, citing *Alligood v. Proctor & Gamble Co.*, 72 Ohio App.3d 309, 594 N.E.2d 668 (1st Dist.1991). "In order to declare the existence of a contract, both parties to the contract must consent to its terms * * *; there must be a meeting of the minds of both parties * * *; and the contract must be definite and certain." *Episcopal Retirement Homes v. Ohio Dept. of Indus. Rels.*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).

{¶ 13} Kertes argues that the agreement was a complete integrated contract and that the trial court erred when it considered parol evidence to determine that Kertes breached the contract. The Sanders, on the other hand, argue that the agreement was an agreement to agree, only binding them until receipt of the BPA to see the full terms of the agreement. Further, the Sanders argue their payment of the $7,000 earnest money was performance on that agreement.

{¶ 14} In order for the Sanders to prevail, they must overcome the presumption that the contract is an integrated writing. It is well established that "a contract that appears to be a complete and unambiguous statement of the parties' contractual intent is presumed to be an integrated writing." *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶ 11. However,

> [w]here an agreement contemplates further action toward formalization or if an obligation to become binding rests on a future agreement to be reached by the parties, so that either party may refuse to agree, there is no contract. In other words, as long as both parties contemplate that something remains to be done to establish a contractual relationship, there is no binding contract.

*Weston, Inc. v. Brush Wellman*, 8th Dist. Cuyahoga No. 65793, 1994 Ohio App. LEXIS 3349, at 14 (July 28, 1994).

{¶ 15} A court will give effect to the words in a contract; it will not delete words or add words not used. *Stephen Dev. Co. v. DTB Land Dev., L.L.C.*, 5th Dist. Stark No. 2011CA00153, 2012-Ohio-1493, ¶ 21, citing *Cleveland Elec. Illumin. Co. v. Cleveland*, 37 Ohio St.3d 50, 524 N.E.2d 441 (1988), paragraph three of the syllabus, *rehearing denied*, 38 Ohio St.3d 704, 532 N.E.2d 1321 (1988). "The fact that one or more terms of a proposed bargain are left open or uncertain may show that" while the parties have shown an intent to engage in a contract, this intent is not necessarily an offer and acceptance. *Id.*, citing *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 169, 464 N.E.2d 586 (8th Dist.1983), citing 2 Restatement of the Law 2d, Contracts, Section 33(3), at 92 (1981).

{¶ 16} Where, as in the instant case, one party argues that the writing was not intended to be the final expression of the agreement between the parties, a court may examine any relevant evidence to determine whether the contract was fully integrated. *Natl. City Bank v. Donaldson*, 95 Ohio App.3d 241, 246, 642 N.E.2d 58 (9th Dist.1994), citing 2 Restatement of the Law 2d, Contracts, Section 210, Comment b (1981); 2 *Farnsworth on Contracts*, Section 7.4 at 211-213 (2d Ed.1990); 3 *Corbin on Contracts,* Section 573 at 360 (1960).

{¶ 17} Here, an express term of the agreement called for the parties to sign the BPA. Kertes acknowledges in its brief and argues that the Sanders did not know what terms would be in the BPA. Kertes argues that that lack of knowledge proves that the BPA was not material. We disagree. A review of the BPA shows that it includes essential terms that would have required the agreement of the parties before a contract could have been formed.

{¶ 18} The BPA included several previously undisclosed fees due at closing. Specifically, the Sanders were obligated to pay a $3,500 capital contribution, a $1,000 fee for maintenance, and the equivalent of three months of association dues. These were not incidental fees. In its motion for summary judgment, Kertes attached a copy of the Master Declaration of Covenants, Conditions, Restrictions, and Easements associated with the Lakes of Orange planned unit development. That document described these fees as "conditions of conveyance" making them part of the price of the property. Price is an essential term of a contract. *Fairfax Homes,* 2008-Ohio-2400, at ¶ 19.

**{¶ 19}** The BPA also spelled out the terms of the basement remodeling.[3] While the agreement indicated the basement would be billed at the "builder's cost," the BPA required additional contracts and required additional funds from the buyer that would be determined by further negotiation.

**{¶ 20}** In addition, the BPA included a damages provision should the Sanders choose not to proceed with the sale. The $7,000 earnest money deposit was to be liquidated damages payable to Kertes if the Sanders withdrew from negotiations.

**{¶ 21}** Finally, the BPA includes the following integration clause:

> Agreement of the Parties: This Agreement contains the entire understanding and agreement of the parties with respect to the sale of the property, and supercedes [sic] all prior agreements, understandings, and representations (written and oral). This Agreement cannot be changed except by a writing signed by Buyer and Seller.

---

[3] Section 7(C) of the BPA states: Post-Closing Basement Improvements: Following Closing, Seller shall arrange for the contractor who constructed the Residence, Kertes Enterprises, L.L.C. (the "Contractor"), to: (a) assist Buyer in planning such improvements to a portion of the basement of the Residence as Buyer desires (the "Basement Improvements"); (b) Generate such plans as are reasonably necessary for the permitting and construction of the Basement Improvements (the "Basement Improvement Plans"); (c) Upon Buyer's approval of the Basement Improvement Plans, determine the cost of the Basement Improvements, without any profit to Contractor or any markup (the "Basement Improvement Costs") using contractors, suppliers, laborers, and materialmen reasonably acceptable to Buyer and Contractor ("Acceptable Contractors and Suppliers"); (d) Upon Buyer's approval of the Basement Improvement Costs, obtain all necessary governmental approvals to construct the Basement Improvements in accordance with the Basement Improvement Plans; (e) Upon receipt of such governmental approvals, supervise the construction of the Basement Improvements pursuant to contracts entered into between Buyer and the Acceptable Contractors and Suppliers, whose invoices Buyer agrees to promptly pay upon review and approval thereof by Contractor; (f) Upon completion of the Basement Improvements and payment of the Basement Improvement Costs, warrant the Basement Improvements pursuant to the Limited Warranty (as hereinafter defined).

{¶ 22} Contrary to Kertes' argument that the agreement was intended to bind the parties, the BPA, which was drafted by Kertes, supports the Sanders' contention that the BPA was the final memorialization of the parties' agreement. The BPA contains several additional terms absent from the agreement. It spelled out additional front-end costs and additional obligations concerning the basement project, and defined penalties if the Sanders ceased negotiations. Further, the BPA included an integration clause designating it as the final agreement of the parties superseding any previous agreements, that by necessity, included the agreement. The Sanders never signed the BPA. Since the parties never agreed on the terms of the BPA, they never had a meeting of the minds, and therefore, never formed a contract.

{¶ 23} This case is similar to that of *Franco v. Kemppel Homes, Inc.*, 9th Dist. Summit No. 21769, 2004-Ohio-2663. In *Franco,* the parties entered into a real estate contract with a signed purchase agreement. *Id.* at ¶ 5. In that agreement, there was a provision that the purchase agreement would be subject to a document entitled "Addendum A." *Id.* at ¶ 6. The parties subsequently executed Addendum A and then entered into a subsequent agreement Addendum B. *Id.* at ¶ 10. A second Addendum B was added, adding additional work that the buyer wanted to be done; however, the seller disagreed with some of the requests and signed the agreement but crossed out the terms he did not agree with. *Id.* at ¶ 13. At that point, the buyer, indicating dissatisfaction with the seller's response to the second Addendum B indicated that he no longer wished to go through with the sale. *Id.* at ¶ 14. The seller

refused to return the buyer's earnest money and the buyer sued. *Id.* at ¶ 14-15. The trial court subsequently granted the buyer's motion for summary judgment finding that the parties never reached a meeting of the minds. *Id.* at ¶ 17.

{¶ 24} In upholding the trial court's decision, the court of appeals found that the parties were engaged in a series of negotiations that culminated in the buyer's rejection of the terms of the second Addendum B. *Id.* at ¶ 30. The court found as a result that there was never a meeting of the minds, that an enforceable contract never existed, and the trial court correctly granted the buyer's motion for summary judgment. *Id.*

{¶ 25} Similarly, here the parties had agreed to some terms but the consummation of their agreement depended on the parties agreeing to the terms of the BPA. Until they received the BPA, the Sanders did not know, nor could they know, the complete terms involved; consequently, there was no meeting of the minds and no contract. Therefore, the Sanders did not breach a contract when they refused to proceed with the sale.

{¶ 26} Nonetheless, Kertes argues that the BPA is not integral to the contract. Additionally, they claim that the agreement included all the terms of an enforceable contract. For that reason, they argue that the BPA is irrelevant to determining the enforceability of the parties' agreement. We disagree. "It is a well-known principle that contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidence by the contractual language." *Olmsted Manor Skilled Nursing Ctr. v. Olmsted Manor*, 8th Dist. Cuyahoga No. 80962, 2002-Ohio-

5457, ¶ 20. In the instant case, the contractual language of the agreement mandated the execution of the BPA. Further, the BPA contained essential terms of the party's agreement, and it is relevant to our determination of whether the parties formed a contract.

{¶ 27} We, therefore, find that the parties failed to come to a meeting of the minds on the purchase of the property. As there was no meeting of the minds, there was no contract. As there was no contract, there was no breach of contract. At most, the "purchase agreement" established an intent to form a contract if the parties could agree to the terms. "Ohio has long recognized the general validity of preliminary agreements." *Borkey v. J.F. Glaze Cleveland L.L.C.*, 2014-Ohio-3727, 18 N.E.3d 820, ¶ 7 (8th Dist.). A preliminary agreement may be enforceable if "the parties manifested an intention to be bound by its terms" and if those intentions are sufficiently definite to be specifically enforced. *Id.,* citing *Normandy Place Assocs. v. Beyer*, 2 Ohio St.3d 102, 105-106, 443 N.E.2d 161 (1982), *overruled on other grounds.*

{¶ 28} Whether a preliminary agreement is enforceable depends on the actions of the parties. *Id.*, citing *Oglebay Norton Co. v. Armco*, 52 Ohio St.3d 232, 236, 556 N.E.2d 515 (1990).

> Therefore, a trial court must consider whether the parties manifested a sufficiently definite intention to be bound such that an agreement would be specifically enforceable or whether they merely negotiated toward a formal contract without ever reaching it.

*Id.*, citing *Oglebay Norton Co. v. Armco*, 52 Ohio St.3d 232, 236, 556 N.E.2d 515 (1990).

{¶ 29} In the instant case, by mandating execution of the BPA, the parties manifested an intention to be bound to the agreement if they agreed to the BPA. Having failed to agree to the BPA, no contract was formed. We agree with the trial court's ultimate decision in denying Kertes' summary judgment motion and granting summary judgment to the Sanders for the above-stated reasons.

{¶ 30} Accordingly, we overrule both assignments of error.

{¶ 31} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent out to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

LISA B. FORBES, P.J., and
EILEEN T. GALLAGHER, J., CONCUR