[Cite as *Tilton v. Geronimo*, 2024-Ohio-5211.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

JOHN C. TILTON, ET AL.,                :

    Plaintiffs-Appellants,      :

                                No. 113571

    v.                                   :

ANDY GERONIMO, ET AL.,          :

    Defendants-Appellees.       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 31, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-978815

---

***Appearances:***

Gordon Reese Scully Mansukhani, LLP, David A. Campbell, Donald G. Slezak, and Y. Timothy Chai, *for appellants*.

Peirce & Salvato, PLLC, and Samuel N. Dodoo, *for appellees*.

MARY J. BOYLE, J.:

{¶ 1} This case involves a dispute between neighbors over the removal of 16 arborvitae trees planted along their shared property line and the terms of their agreement regarding that removal. Plaintiffs-appellants, John C. Tilton and Carisa

A. Tilton ("the Tiltons"), filed a complaint for breach of contract, unjust enrichment, trespass, and fraudulent misrepresentation against defendants-appellees, Andy Geronimo and Caitlin Bell ("the Geronimos"), alleging the Geronimos removed the trees without compensation. The parties filed cross-motions for summary judgment on all claims, and the trial court granted summary judgment in favor of the Geronimos on all of the Tiltons' claims and denied the Tiltons' motion for summary judgment. For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 2} The Tiltons and the Geronimos are next door neighbors in Shaker Heights, Ohio, whose shared property line has a series of arborvitae trees forming a hedge running from the front of the parties' properties to the rear. The hedge ran alongside the Geronimos' driveway. Neither party was certain as to who owned the trees. In 2018, the Geronimos obtained an estimate to replace their driveway because it was in a state of disrepair. The contractor indicated that several of the arborvitae trees would need to be removed to replace the driveway. This information was conveyed to the Tiltons. The Geronimos did not replace the driveway at that time; however, the parties discussed the removal of the trees, as well as possibly erecting a joint fence between the yards in the back.

{¶ 3} Three years later, in November 2021, the Geronimos informed the Tiltons that they planned to replace the driveway in the spring/summer of 2022 and reiterated that the trees would need to be removed. At the same time, the parties

again discussed a fence that the Tiltons wanted to erect in between their yards in the back. Ultimately, the parties could not agree on the fence.

{¶ 4} In March 2022, the Geronimos hired and placed a deposit with a contractor to replace their driveway. It was determined that the driveway required the removal of approximately 16 arborvitae trees from the sidewalk back to the gate post ("front trees"). The tree removal was set for April 14, 2022; however, the Tiltons requested a delay to further discuss the matter. The Geronimos delayed their contractor.

{¶ 5} Thereafter, the following exchange occurred via email. On April 19, 2022, the Geronimos wrote:

> Thanks, Carisa [Tilton]. We haven't heard from the fence contractor, but will let you know if/when he sends a quote. Our primary concern at this point is to not further delay the driveway work — we don't want the City to cite us for the disrepair, and we already paid [the contractor] a deposit based on our discussions with you over the past couple years about how those front trees would need to be removed in order to fix the driveway, and our understanding over the years that you were both okay with that. [The contractor] was supposed to lay the driveway in April or May, but we've already delayed him by asking him not to come get started last Friday because we were waiting to hear back from you.
>
> Is there anything we can agree on now — in other words is your issue with the driveway (to be replaced at the same width of its current footprint), the front set of trees (i.e. the arbor vitae that are closer to our driveway), the back set of trees (i.e., the bushier trees at the back that are planted further from our driveway), or some combination of those? I thought we were all in agreement that at least the front trees could be removed. Margaret told us that Mrs. Brachna planted them, so it's been our understanding that the front trees were planted on our property. I think if [the contractor] can get started on removing those front trees, we have a chance of proceeding with our driveway replacement plans and not falling off of his list and potentially losing our deposit.

If it would be helpful for us all to head out to the driveway and talk it over again and see if we can agree on a plan that would make it possible for us to move forward with replacing our driveway, we would be happy to do that and could be available any evening this week except for Thursday.

As I told Chip [Tilton], we don't want to move forward with the projects unless you all are on board with the plan — the mutual fence was predicated on the idea that we could all agree on a course of action, i.e. where to put a fence between our properties. If your concerns are broader than that, and you would prefer for us to wait to commence any work on our driveway replacement as well as any portion of the trees until your surveyor can come out, we intend to wait for your surveyor. If that's the case, we would appreciate if there is any way for your surveyor to come earlier than 4 weeks from now, since that long of a delay may inhibit our ability to replace our driveway this season, and in any event we may revise our plans depending on what a survey shows.

But if you are okay with our replacing the driveway and removing the front trees (setting aside any decisions about the back trees and a fence until after the survey, if that's what you want), please let us know because we would then be able to move forward with just our plans to remove those front trees and replace the driveway. If your objection is to the location of the driveway itself, our position is that the current location of the driveway is our property, and whatever the survey shows, we'd be within our rights to at least repave the driveway on the existing footprint and trim the trees wherever they overhang the driveway.

Please let us know if you'd like to talk about any of this — hopefully we can get this figured out relatively smoothly!

Thanks,

Andy [Geronimo]

(Geronimos' Email April 19, 2022, Geronimos' MSJ exhibit No. 6.)

{¶ 6}   The Tiltons responded on Apr. 20, 2022, stating:

Sorry it took us a little while to get back to you. Carisa [Tilton] and I apparently weren't exactly on the same page about all of this so we needed to discuss and figure things out! We definitely appreciate your

concerns about not wanting to fall off [the contractor's] schedule and do understand that your driveway needs work. Our primary concern is that this is a large project involving driveway and trees that are along the property line, and none of us actually knows exactly where the property line really lies. We're on the books for a survey to get done in the next month... might be sooner if they have availability. We needed this anyway for our potential plans to split the driveway on the side with Vlad's yard.

Here's what I would suggest we do:

1. Let's figure out the exact footprint of the existing driveway by digging up some of the topsoil that's currently covering it so that we can see and measure where the driveway currently is. We do not have a problem with you making your concrete driveway in the exact footprint of your current driveway, which I assume was done properly when it was originally put in. If you guys do want to widen the driveway I think we need to wait until we have the survey and make sure that the driveway is done according to Shaker's regulations in terms of proximity to property boundaries.

2. We are fine with taking out the pointy trees from the gate post to the street, which I think are the ones [the contractor] needs out to do the driveway if I understood you correctly. To be honest though, I have absolutely no idea whether those are on your property or ours. I've heard the story that the Brachna's planted them, but I never heard it from the Brachnas or the Buchheims (the people who owned the house before us). Without a survey we don't know for absolute certain where those trees are with regard to the property line.

Either way, we are ok with removing those trees from the gate post to the street, regardless of whose property they're on.

3. We do like having the trees in the back of the yard that are planted further away from your driveway (the "bushy" trees). I think those are on our property, but again I don't know for certain without a survey. If those are on our property we will leave them up, but of course you are welcome to trim them if they're extending into your property so that Wayne can build a fence. We don't need/want the fence but can certainly understand why you guys would want it for privacy and safety. But we do ask that you build the fence on your side of the property line, so if you want to get it as close to the line as you can we should probably wait for the survey to know exactly where that property line lies.

4. The most complicated part is probably the pointy trees between the gate and the bushier trees that are planted farther back from your driveway. If Ms. Brachna planted those on your property then you're obviously within your right to take those out, but if they were planted on our side we would prefer to keep them for aesthetic reasons. I would suggest that we leave those until after the survey unless [the contractor] absolutely needs them out in order to make the driveway in which case we should discuss further.

Hopefully this will be a good compromise where you guys can get the driveway work going with [the contractor] and not have to delay that work. I'm sorry Carisa and I weren't totally on the same page here and I know that's caused some confusion and stress … we obviously like you guys and understand your needs for a new driveway but I'm sure you also understand that we want to make sure the property boundaries are respect[ed].

Hopefully that sounds reasonable to you guys. Let me know,

Best!

Chip [Tilton]

(Tiltons' Email April 20, 2022, Geronimos' MSJ exhibit No. 6.)

{¶ 7} On April 21, 2022, the Geronimos responded with

Thanks, Chip [Tilton], and no worries. We really like having you guys as neighbors also. We're on board with the plan as you laid it out — let us know when you want to check out the driveway together in the next few days. Then we'll call [the contractor] to confirm the plan with respect to the trees in front of the gate post and the driveway, and wait on the survey to figure out what to do in terms of those middle pointy trees and a fence.

We'll keep you all in the loop and please do the same! We definitely agree that it's better to get this figured out in advance rather than have it become a bigger issue by not discussing these things.

Andy [Geronimo]

(Geronimos' Email April 21, 2022, Geronimos' MSJ exhibit No. 6.)

{¶ 8} In May 2022, the front trees were removed, and the Geronimos' driveway was replaced. The arborvitaes were not replaced. Nearly a year later, in March 2023, the Tiltons asked the Geronimos for the replacement cost of five arborvitae trees. Thereafter, the Tiltons demands increased in the total number of arborvitaes, the cost of arborvitaes, and included landscaping fees. The Geronimos asked to meet and discuss the costs and the placement of the trees. The Tiltons refused to meet with the Geronimos.

{¶ 9} In May 2023, the Tiltons filed a complaint against the Geronimos alleging breach of contract, unjust enrichment, trespass, and fraudulent misrepresentation. The Tiltons claimed that (1) the parties had an agreement that the Tiltons would allow the Geronimos to "temporarily" remove several arborvitaes to replace their driveway and the Geronimos would reimburse the Tiltons the cost of the trees if a survey revealed the arborvitaes to be on the Tiltons' property, (2) the Geronimos were unjustly enriched by removing and not replacing the trees, (3) the Geronimos trespassed on their property to remove the trees, and (4) the Geronimos pressured the Tiltons into removing the trees by misrepresenting facts. Both parties filed cross-motions for summary judgment on all claims. The Geronimos argued that the parties had a valid contract as expressed in their emails and that it did not include replacement of the arborvitaes. The Tiltons argued, among other things, that the emails were not a valid contract due to fraudulent misrepresentation and lack of consideration. The trial court granted summary judgment in favor of the

Geronimos on all of the Tiltons' claims and denied the Tiltons' motion for summary judgment without opinion.

{¶ 10} The Tiltons appealed raising two assignments of error for our review:

**Assignment of Error I:** Whether the Trial Court erred by denying [the Tiltons'] motion for summary judgment, where [the Tiltons'] proved that there were no issues of genuine fact, and that [the Tiltons'] were entitled to judgment as a matter of law on all claims asserted in their complaint (the "Complaint").

**Assignment of Error II:** Whether the Trial Court erred by granting [the Geronimos'] motion for summary judgment, where summary judgment was appropriate for the Tiltons and, if not, where a genuine issue of material fact existed to deny the [Geronimos'] Motion for Summary Judgment in its entirety.

## II.  Law and Analysis

### Standard of Review

{¶ 11} We review an appeal from summary judgment under a de novo standard. *Cleveland Elec. Illum. Co. v. Cleveland*, 2020-Ohio-4469, ¶ 13-15 (8th Dist.), citing *Baiko v. Mays*, 140 Ohio App.3d 1, 10 (8th Dist. 2000). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Id.*, citing *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192 (8th Dist. 1997). Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine:

(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.

{¶ 12} Civ.R. 56(C) also provides an exclusive list of materials that parties may use to support a motion for summary judgment:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

{¶ 13} The moving party carries the initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). If the movant fails to meet this burden, summary judgment is not appropriate, but if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id*. at 293.

## First Assignment of Error — Withdrawn

{¶ 14} In the Tiltons' first assignment of error, the Tiltons maintained that there is no genuine issue of material fact as to their claims of breach of contract, unjust enrichment, trespass, and fraudulent misrepresentation and that the trial court erred by denying the Tiltons' motion for summary judgment. At oral argument, however, the Tiltons maintained that there *is* a genuine issue of material fact as to their four claims and withdrew their first assignment of error. (Oral Argument, May 6, 2024.) *See Biggers v. Columbus City School Dist*., 1990 Ohio App. LEXIS 3225, at *1 (10th Dist. July 31, 1990) (allowing the withdrawal of an assignment of error at oral argument, citing Civ.R. 12).

{¶ 15} Accordingly, being withdrawn, the first assignment of error is disregarded.

## Breach of Contract

{¶ 16} In the second assignment of error, the Tiltons argue that a genuine issue of material fact remains as to each of their claims and that summary judgment should not have been granted against them. Specifically, the Tiltons contend that the Geronimos are liable for breach of contract, unjust enrichment, trespass, and fraudulent misrepresentation after they had entered the Tiltons' property and removed 16 arborvitaes without reimbursing the Tiltons. The Geronimos argue that the email exchange between "Andy" Geronimo and "Chip" Tilton constitutes a valid contract whereby both parties agreed to the removal of the arborvitaes and reimbursement was not contemplated by the parties. The Tiltons assert that the emails are not a valid contract because it lacked consideration and there was no "meeting of the minds" due to the Geronimos' fraudulent misrepresentation.

{¶ 17} In order to prevail on a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a binding contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages resulting from the breach. *180 Degree Solutions LLC v. Metron Nutraceuticals, LLC*, 2021-Ohio-2769, ¶ 41 (8th Dist.). "Contract formation requires an offer, acceptance, consideration, and mutual assent between two or more parties with the legal capacity to act." *Kertes Ents., L.L.C. v. Sanders*, 2021-Ohio-4308, ¶ 11 (8th Dist.), quoting *Widok v. Estate of Wolf*, 2020-Ohio-5178, ¶ 52 (8th Dist.), citing *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16.

"Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Williams v. Ormsby*, 2012-Ohio-690, ¶ 16, citing *Irwin v. Lombard Univ.*, 56 Ohio St. 9, 19 (1897). "A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss or responsibility given, suffered or undertaken by the promisee." *Id.* If the benefit or detriment is "bargained for," then "a court will not inquire into the adequacy of consideration once it is found to exist." *Carlisle v. T & R Excavating*, 123 Ohio App.3d 277, 283 (9th Dist. 1997), *see Rogers v. Runfola & Assocs.*, 57 Ohio St.3d 5, 6 (1991). "Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Id.*

{¶ 18} The Tiltons' April 20th email stipulates that the Geronimos may remove the "front trees" but must wait for a future land survey before (1) removing the "back trees," (2) removing the "middle trees," and (3) widening their driveway. Although the Tiltons claim that the trees are not valid consideration because they did not want the trees removed in the first place, it has long been held that "[c]onsideration means not so much that one party is profiting as that the other abandons some legal right in the present or limits his legal freedom of action in the future as an inducement for the promise of the first." *Hamer v. Sidway,* 124 N.Y. 538, 546 (1891) (where the court found a detriment to the promisee in forbearing his legal right to engage in such conduct); *see also* 1 Corbin on Ohio Contracts § 5.02 (2024); *accord FPC Fin. v. Wood*, 2007-Ohio-1098, ¶ 11 (12th Dist.); *Cheap Escape*

*Co. v. Crystal Windows & Doors Corp.*, 2010-Ohio-5002, ¶ 14 (8th Dist.) ("It is not necessary that the guarantor derive any benefit from the undertaking in order to create a binding contract."). The April 20th agreement establishes that the Geronimos promised not to expand the driveway and refrain from removing the "middle trees" and "back trees" if the Tiltons promised to give them permission to remove the "front trees." The Geronimos received the benefit of removing the "front trees," and they were required to forbear expanding their driveway and removing the "middle trees," and the "back trees." We find that, by allowing the Geronimos to remove the "front trees," the Tiltons received the benefit of the Geronimos not expanding their driveway or removing the "middle trees" or "back trees." This exchange is consideration.

{¶ 19} Once valid consideration is found, courts should refrain from reviewing the adequacy of consideration, because the parties are "'the sole judges of the benefits or advantages to be derived from their contracts.'" *Digitalight Sys. v. Cleveland Clinic Found.*, 2022-Ohio-1400, ¶ 32 (8th Dist.), quoting *Hotels Statler Co., Inc. v. Safier*, 103 Ohio St. 638, 644-645 (1921); *Ormsby*, 2012-Ohio-690, at ¶ 17. As declared by Justice Benjamin N. Cardozo, "If a person chooses to make an extravagant promise for an inadequate consideration it is his own affair." *Allegheny College v. Natl. Chautauqua Cty. Bank*, 246 N.Y. 369, 377 (1927).

{¶ 20} Having found valid consideration, we turn to the Tiltons' argument that the emails were not a valid contract because the Geronimos omitted material

facts and made material misrepresentations to get the Tiltons to consent to the removal of the trees.

## Fraudulent Misrepresentation

{¶ 21} The Tiltons argue that there was no "meeting of the minds" because of the Geronimos' fraudulent misrepresentation. Specifically, the Tiltons contend that (1) the Geronimos should have shared their mortgage survey with the Tiltons; (2) the Geronimos misrepresented that they had been fined by the city because of their driveway; and (3) the Geronimos stated that they feared losing their deposit with the company replacing their driveway.

{¶ 22} "'In order to declare the existence of a contract, both parties to the contract must consent to its terms * * *; there must be a meeting of the minds of both parties * * *; and the contract must be definite and certain.'" *Id.*, quoting *Episcopal Retirement Homes v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). It is well settled that fraud or misrepresentation that goes to the inducement of a contract is a defense to an action on that instrument. *Imperial Aluminum v. Persuric*, 1981 Ohio App. LEXIS 10511, *6 (8th Dist. Aug. 6, 1981), citing *Gross v. Ohio Savs. & Trust Co.*, 116 Ohio St. 230, 235 (1927). To prevail on a claim for fraudulent misrepresentation the plaintiff must show that "'(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on

it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.'" *Pedone v. Demarchi*, 2007-Ohio-6809, ¶ 28-29 (8th Dist.), quoting *Cardi v. Gump*, 121 Ohio App.3d 16, 22 (8th Dist. May 22, 1997), citing *Schlecht v. Helton*, 1997 Ohio App. LEXIS 114 (8th Dist. Jan. 16, 1997).

{¶ 23} Initially, the Tiltons argue that because the Geronimos are both attorneys, they had a duty to advise the Tiltons to hire an attorney to negotiate the agreement between them as well as to be truthful in the negotiations citing Prof.Cond.R. 4.1 and 4.3. It is unclear how this relates to the Tiltons' claim for fraudulent misrepresentation, other than an attempt to create a legal duty to disclose Geronimos' mortgage survey. However, Prof.Cond.R. 4.1 and 4.3 are inapplicable because these rules apply to attorneys who are representing clients, which is not the situation here. The Tiltons are not the Geronimos' clients. Further, the Ohio Prof.Cond.R.Preamble, Comment 20, specifically states that the rules do not "create any presumption . . . that a legal duty has been breached" and are "not designed to be a basis for civil liability." Therefore, we cannot say that the Geronimos violated a duty to disclose when they did not mention or show their mortgage survey to the Tiltons. Furthermore, it is unclear how seeing the mortgage survey — which explicitly states that it does not locate or determine boundary lines — would have affected the Tiltons' decision to allow the removal of the trees. (Geronimos' MSJ exhibit No. 7.) Finally, the Tiltons admitted in a subsequent email that they would have allowed the removal of the trees even if they knew the trees

were on their property. Therefore, the Tiltons cannot say that the mortgage survey was material to the deal. (Tiltons' Email Mar. 10, 2023, Geronimos' MSJ exhibit Nos. 6 at 7.)

{¶ 24} Next, the Tiltons claim the Geronimos lied to them and that they consented to the removal of the trees because they thought the Geronimos had been fined by the city and would lose their deposit for their driveway replacement. However, the Tiltons' accusations are only corroborated by self-serving affidavits after the fact, which are also contradicted by Geronimos' email at the time of agreement wherein they stated:

> Our primary concern at this point is to not further delay the driveway work — we don't want the City to cite us for the disrepair, and we already paid [the contractor] a deposit based on our discussions with you over the past couple years about how those front trees would need to be removed in order to fix the driveway, and our understanding over the years that you were both okay with that . . . . I thought we were all in agreement that at least the front trees could be removed. . . . I think if [the contractor] can get started on removing those front trees, we have a chance of proceeding with our driveway replacement plans and not falling off of his list and potentially losing our deposit.

(Geronimos Email 4/19/2022, Geronimos' MSJ exhibit No. 6).

{¶ 25} From this email, it is clear, the Geronimos did not indicate that the city had fined them, nor did they indicate they would lose their deposit. They simply expressed their concern regarding potential fines, and potentially losing their opportunity to have their driveway done in the spring after already making the downpayment. Therefore, after reviewing the entire record, we cannot say that the Geronimos made false statements or owed a special duty to the Tiltons. Accordingly,

there is no genuine issue of material fact as to the fraudulent misrepresentation claim and summary judgment was proper in that regard.

{¶ 26} Having determined that the Tiltons were not fraudulently induced into this agreement, the Tiltons cannot escape the plain meaning of their own words. The Tiltons demanded, and the Geronimos agreed, to keep the Geronimos' driveway in the original footprint, as well as not remove "middle trees" and "back trees" until a survey was completed in exchange for the Tiltons allowing the removal of the front trees. This was clearly stated in the Tiltons' email dated April 20, 2022: "We are fine with taking out the pointy trees from the gate post to the street [the "front trees"], . . . To be honest though, I have absolutely no idea whether those are on your property or ours. . . . Either way, we are ok with removing those trees from the gate post to the street, regardless of whose property they're on." (Geronimos' MSJ exhibit No. 6.) The emails plainly state an offer, acceptance, and consideration.

{¶ 27} Finally, the Tiltons contend that if there was a contract, it included the reimbursement of the arborvitaes. The Tiltons point to their affidavits and deposition testimony to substantiate their claim that the agreement included reimbursement for the trees. However, this court has held that "'[w]here contract language is unambiguous, the contract must be enforced as written, i.e., the court may look only to the plain language of the parties' agreement to determine the parties' rights and obligations.'" *Worldwide Motor Sales Ltd. v. Young*, 2023-Ohio-1897, ¶ 8 (8th Dist.), quoting *Vail v. String*, 2019-Ohio-984, ¶ 27 (8th Dist.).

{¶ 28} After reviewing the entire record, and the contents of the emails, this court finds that the contract is unambiguous and does not contain reimbursement for the trees. The fact that the Tiltons no longer like the agreement that they suggested, does not invalidate the contract or create a genuine issue of material fact. Therefore, we find that there was a valid contract between the parties that did not include reimbursement or replacement of the trees and summary judgment was proper as to the contract claim.

## Unjust Enrichment Claim

{¶ 29} The Tiltons' complaint also alleged that the Geronimos were unjustly enriched by the removal of the trees without compensation. However, "'Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject.'" *Digitalight Sys.*, 2022-Ohio-1400, ¶ 65 (8th Dist.), quoting *Padula v. Wagner*, 2015-Ohio-2374, ¶ 48 (9th Dist.), citing *Ullmann v. May*, 147 Ohio St. 468, 478-479 (1947), paragraph four of the syllabus. Because we have found a valid contract exists between the parties, the Tiltons' claim for unjust enrichment fails, and no genuine issue of material fact remains to be litigated on this claim.

## Trespass Claim

{¶ 30} Finally, the Tiltons' complaint alleges that the Geronimos trespassed when the trees were removed and interfered with the Tiltons' landscaper by parking their car in a location to inconvenience the workers. A trespass is established where a defendant enters onto another's property without authorization. *Olive Oil, L.L.C.*

*v. Cleveland Elec. Illum. Co.*, 2021-Ohio-2309, ¶ 15 (8th Dist.). Again, we find no genuine issue of material fact remains to be litigated on the trespass claim because the Tiltons authorized the Geronimos to enter the property to remove the trees. Furthermore, there is no evidence that the Geronimos parked their vehicle on the Tiltons' property without authorization. Consequently, the trespass claim fails as a matter of law and summary judgment was proper.

{¶ 31} Accordingly, the second assignment of error is overruled.

{¶ 32} Judgment is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR